## W. M. WEDDINGTON, RECEIVER, v. E. B. CARVER ET AL.

### Decided January 19, 1907.

1.—Alias Execution—Judgment.

It is not necessary that the judgment should provide for the issuance of an alias execution.

2.—Railroad Laborer's Lien—Foreclosure—Sale.

. A sale of only a part of the property of a railroad company upon which a railroad laborer's lien has been foreclosed, is not void. There is no statute so declaring. Articles 3313 and 4553, Revised Statutes, construed.

**3.—Railroads—Debt—Mortgage—Pledge.**

Even though a mortgage executed by a railroad company might be invalid because not approved by the Railroad Commission, still when the bonds of the railroad are placed with the mortgagee as a pledge to secure the debt, the mortgagee has the right to appropriate the proceeds of the bonds to the satisfaction of his debt when the bonds are sold.

Appeal from the District Court of Parker County. Tried below before Hon. J. W. Patterson.

*P. M. Stine* and *R. E. Beckham,* for appellant.—The court erred in admitting in evidence the alias execution issued by the clerk of the District Court of Parker County, Texas, on the 1st day of May, 1902, and directed to the sheriff of Palo Pinto County, Texas, in favor of Robert Winder v. the Gulf & Brazos Valley Railroad Company because the judgment does not authorize the issue of such execution and said execution does not state the names of the parties thereto and the amount due thereunder. Sayles' Stats., art. 2338.

An execution must be authorized by and must conform to the judgment, and unless authorized by the judgment is void. Criswell v. Ragsdale, 18 Texas, 443.

The court erred in admitting in evidence said execution and the return of the officer for the further reason that said sale was for a part only of the road and franchise of said railroad company and was made in a county other than that in which the principal office of said railroad company was located. Sayles' Stats., art. 4553.

No evidence of debt to become a lien on the property of a railroad company is valid unless approved by the Railroad Commission of this State. Sayles' Stats., arts. 428h, 458k.

*George Thompson* and *Matlock, Miller & Dycus,* for appellees.—The alias execution was admissible in evidence, as the law does not require a judgment to provide for the issuance of more than one execution. Freeman on Executions, sec. 23; Roberts v. Connellee, 71 Texas, 18; Schmidt v. Huff, 28 S. W. Rep., 1053.

The court did not err in admitting in evidence the alias execution and return of the officer thereon, for the reason that the sale was for a part only of the road and franchise of said railway company. Rev. Stats., art. 3313; Texas & St. L. Ry. v. Allen, 1 Texas App. Civ., sec. 572.

The judgment in the case of Squires et al. v. Carver et al., by which Carver recovered a judgment for $50,000 against the Gulf & Brazos Valley Railway Company superior to that of Squires, who was an intervener in this case, was properly admitted in evidence against the plaintiff. Kerr v. Oppenheimer, 20 Texas Civ. App., 143; McCamant v. Roberts, 66 Texas, 260; Garland v. Rives, 15 Am. Dec., 756; Bensimer v. Fell Co. (W. Va.), 29 Am. St. Rep., 724; Moore v. Curry (Ala.), 18 So. Rep., 46; Turner v. Luckett, 2 La. Ann., 885; Freeman on Judgments, sec. 418.

SPEER, ASSOCIATE JUSTICE.—W. M. Weddington, receiver of the Gulf & Brazos Valley Construction Company, recovered a judgment in

the District Court of Clay County on April 19, 1902, against the Gulf & Brazos Valley Railway Company for the sum of $16,888.71, with interest from January 1, 1900, at 6 percent per annum. On October 23, 1902, suit was instituted in the District Court of Travis County by the Attorney General of the State against the Gulf & Brazos Valley Railway Company to forfeit its charter, in which suit a judgment of forfeiture was entered. No receiver was appointed in that suit and at the time the railway company owned about ten and one-half miles of completed railroad, extending from Peck City to Mineral Wells, had procured the right of way for an extension of its line, and had graded and had ready for ties and rails a portion of said right of way, and also owned some other property, such as a telegraph line from Peck City to Mineral Wells, two locomotive engines, etc. On February 4, 1903, Weddington instituted this suit against E. B. Carver, G. E. Bennett, S. E. Turner, W. L. Kern, H. D. Arnold, H. N. Frost, M. D. Birdwell, T. H. Hammond and Ed. Oliver as trustees under the statute (these defendants having been directors of the Gulf & Brazos Valley Railway Company at the time of its dissolution), Herbert W. Morse and the Weatherford, Mineral Wells and Northwestern Railway Company, to recover the amount of his said judgment against the railway company upon the ground that at the time of the dissolution of said railway company by the decree of the District Court of Travis County there was in the hands of said directors property belonging to the said railway company more than sufficient to pay off said indebtedness, and that they, in conjunction with the other defendants named, had converted the property to their own use and otherwise disposed of it in such way as to make them personally liable for the payment of his debt.

The defendants answered this suit by the general denial and specially pleaded that on the —— day of September, 1899, the Gulf & Brazos Railway Company, through its board of directors, entered into an agreement in writing with the defendant E. B. Carver, in which it was agreed that if Carver would furnish iron, ties and other materials for the construction of the road from Peck City to Mineral Wells, the railway company would pay him therefor $28,300 on March 1, 1900, with interest at 8 percent per annum from September 12, 1899, $8,000 on or before September 12, 1900, with interest as aforesaid, and to secure payment of said sums executed a deed of trust through its president to F. E. Dycus, trustee, authorizing him in case of default to sell the property so mortgaged; that it was further provided in said contract that in lieu of sale of said property by the trustees, Carver should have the right to sell the bonds of the company thereafter to be issued at public or private sale, and that he might become the purchaser of the same at such sale; and further, that if said Carver would advance further sums for the construction of the road or equipping and operating the same, the instrument should secure him in the payment of such advances, and in case of a sale of the property or bonds by said Carver, the sums so advanced should be paid to Carver before any amount should be paid to the railway company; that on November 6, 1899, the railway company executed a mortgage securing its bonds to be issued conveying all of its property to the Union Trust Company of St. Louis, Missouri, and that in the early part of 1900 there were issued by the railway company

its first mortgage bonds, amounting to $88,000, which, under said agreement, were delivered to E. B. Carver; that on May 25, 1900, Carver had advanced to the railway company more than $68,000, and under the terms of his contract on June 4, 1900, gave notice to the railway company of his intention to sell said bonds, and did sell the same at public outcry, and himself became the purchaser of all of said bonds for the sum of $15,000 cash. Defendants further pleaded purchases of all of the property of the railway company at certain execution sales, whereby defendant Carver had become the owner of all the property and rights of the railway company, and that the same had been conveyed to the defendant Herbert W. Morse, and that the money received for the sale of said bonds and at said execution sales was altogether insufficient to reimburse the defendant Carver for the expenditures made by him under his agreement with the railway company.

The plaintiff replied by setting up fraud in the various transactions by which defendant Carver acquired the bonds and property of the railway company, that the contract pleaded between the railway company and Carver and all evidences of indebtedness executed by the railway company were made without previous authority of the Railroad Commission of Texas and in contravention of law; that the sale of a portion of the road belonging to the railway company was in contravention of the statute regulating the sale of railroads; and that the decree of the District Court of Travis County dissolving the railway corporation was procured by the defendants by false and fraudulent representations. The trial court, after having heard the evidence, instructed a verdict for the defendants from which the plaintiff has appealed.

The first complaint is that the trial court erred in admitting in evidence the alias execution issued by the clerk of the District Court of Parker County, Texas, on May 1, 1902, and directed to the sheriff of Palo Pinto County, Texas, in favor of Robert Winder against the Gulf & Brazos Valley Railway Company, because the judgment does not authorize the issuance of such execution, and the execution does not state the names of the parties thereto and the amount due thereunder. The judgment rendered in the case of Robert Winder versus the Gulf & Brazos Valley Railway Company stipulated that plaintiff and each and all of the interveners were adjudged therein to be laborers upon the railway defendant, and that each was entitled to a railway laborer's lien for the purpose of securing said indebtedness, and it was ordered that the property, rights and franchises, including the roadbed, superstructure, track and all property of the railway company from Peck City in Parker County to Mineral Wells in Palo Pinto County should be sold to satisfy said indebtedness. On appeal to this court the judgment of the District Court was affirmed to the extent of $16,000, and it was ordered that the said property of the railway company should not be sold for less than the sum of $16,000. The property did sell to E. B. Carver for $16,000. The record contains the following entry as to the execution, the admission of which in evidence is complained of: "An execution issued out of the District Court of Parker County, Texas, in said case of Robert Winder versus the Gulf & Brazos Valley Railway Company, bearing date May 12, 1902, directed to the sheriff of Palo Pinto County and commanding him to levy upon the property of the Gulf & Brazos Valley

Railway Company sufficient to make the sum of $638.35, being the unsatisfied balance on said judgment." We think the objections of appellant were properly overruled. It is not necessary that the judgment should provide for the issuance of an alias execution, and the portion of the record quoted shows that the second objection is without merit.

The further objection to this evidence and the return of the officer thereon, that said sale was for a part only of the road and franchise of the railway company and was made in a county other than that in which the principal office of the railway company was located, is not tenable under the facts of this case, since at the time of the rendition of the judgment in the Winder case the property embraced in the order of foreclosure constituted all of the property belonging to the railway company; and further, because there is no statute declaring void an execution sale of a part only of the property of a railroad company, especially in a case of foreclosure of a railway laborer's lien, as this one was. See Revised Statutes, art. 3313. The article cited seems to contemplate that a part only of the railroad and its equipments may be sold to satisfy the laborer's lien, notwithstanding the language of article 4553 invoked by appellant.

When the appellees sought to prove the mortgage executed by the railway company to Carver, the same was excluded by the court on the objection that it had not been approved by the Railroad Commission, but the court admitted in evidence two notes attached to and secured by the mortgage over the same objection. This ruling is assigned as error. If it be conceded that the attempted lien upon the railway company's property to secure Carver in his advances was void under the statute, it does not follow that the court erred in admitting these notes in evidence. There seems to be no question but that the bonds to the extent of $88,000 were regularly issued and approved by the Railroad Commission and placed in Carver's hands as a pledge to indemnify him against loss by reason of expenditures in behalf of the railway company. He paid off the two notes introduced in evidence and unquestionably had a right to reimburse himself from the proceeds of the bonds thus pledged. The indebtedness evidenced by the notes may not have constituted a lien against the property of the railway company for want of the approval of the Railroad Commission, but this fact would not in the least affect the conclusion announced.

Nor was there error in admitting in evidence the judgment of the District Court of Parker County, rendered November 14, 1902, in the case of L. H. Squires et al. v. Gulf & Brazos Valley Railway Company, as against the objection that the plaintiff was not a party to said judgment. Squires, the plaintiff in that case, was an intervener in this case and the judgment was at least admissible as against him.

This brings us to a consideration of the court's action in giving a summary instruction to find for the defendants, and without detailing the evidence which is very voluminous, we content ourselves by announcing our conclusion to the effect that the evidence conclusively shows that the defendants have never appropriated any of the property of the Gulf & Brazos Valley Railway Company in violation of plaintiff's rights. In other words, that the defendant Morse is now the lawful owner of the property formerly belonging to the Gulf & Brazos Valley Railway

Company, having acquired the same through various foreclosure and other sales regularly made.

The judgment of the District Court is therefore affirmed.

*Affirmed.*

Writ of error refused.